Case 14-3864 USA v. Divna Maslenjak. Oral argument not to exceed 15 minutes per side. Ms. Adut for the appellant. Good afternoon and may it please the court. Pavan Adut on behalf of Appellant Divna Maslenjak. I'd like to reserve four minutes for rebuttal please. The government faces twin legal obstacles on this remand, neither of which it can clear. First, the standard that applies under Netter is a demanding one. A jury conviction based on an improperly instructed jury violates the Sixth Amendment unless the government proves beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming and uncontroverted evidence. What is more, this is not merely a case where an element was omitted. This is a case where the jury was instructed the opposite of what the law is. This jury was charged that it could convict even without finding a material falsehood. Indeed, the instructions charge, even if you find... Ms. Adut, we know about what's happened in this case. We know it got remanded, so now we're here on harmless error. Well, the government then faces a second legal obstacle specific to the facts here and that has to do with the standard that applies now for stripping someone of citizenship. And the Supreme Court's opinion makes clear where the illegality charged under 1425a is a false statement, the government has only two ways to prove materiality. First, the government can prove that had the defendant revealed the truth, that truth would reveal facts that would objectively disqualify the defendant from citizenship. And second, the government... Could I ask you a question? You state, and I think the briefs on both sides really reflect this, that the question is whether the false statement would have disqualified the defendant, meaning her, from citizenship. Now, what I'm wondering about, and this will reveal my lack of complete knowledge about how these immigration cases work, is that the false statement occurred in the naturalization proceeding back in 1998, right? So the false statement that forms the basis of the conviction is the 2006 false statement on either question 23 or 24. But that was simply, had you ever lied? Yes. And the lie that's underneath that is what she said in 1998, right? So in 1998, she was the primary applicant and her husband and kids were derivative, were they not? Yes, they were. So a lot of the discussion in the briefs seems to be saying, well, lying about whether her crimes didn't affect her naturalization proceeding, except insofar maybe now, in hindsight, we look at whether that proves she was in good character. So that's what's being briefed and discussed, but didn't her lie in 1998 affect whether he would then also be naturalized? So let me unpack what you just asked, because I think there are multiple parts to get to the answer. Please do. So because there are multiple layers of misstatement, I think the best way to think about the Supreme Court's opinion is there are objectively disqualifying facts and objectively disqualifying lies. In order to obtain a conviction under 1425A, when the defendant is charged with procuring her own naturalization illegally, I think the government must prove that that naturalization was illegally obtained, or there's something objectively that would disqualify the defendant. The government has the option to charge someone with illegally obtaining someone else's naturalization, but here it chose to charge... So even though her statement, assuming it's, and I think you admit it was false, it did impact whether he got derivative citizenship, she's not charged with that crime. Is that basically the answer? She's not charged with that crime, and I don't think we know on the record whether it impacted Rodko Maslanyak's grant of refugee status in 1998. Okay, you answered the question. Thank you. That's where I think the confusion can come from in this case. And the government claims here that all it has to show is that had Ms. Maslanyak told the truth, it would have predictably led to facts that, quote, would have mattered to an immigration official. But the Supreme Court's opinion, while it says those words, has a comma, and it goes on and says, because they would have justified denying naturalization or would predictably have led to other facts warranting that result. So the Supreme Court makes clear that there is no room for subjectivity in these immigration decisions in the first instance. There is no personal whim that matters. It's objective facts. And so the government has to show that Ms. Maslanyak would have been ineligible for citizenship on day one. And the only way that they can do that is show objectively disqualifying facts or an objectively disqualifying lie. And none of the facts that they point to, such as Rodko's military service, would impact her ability in the first instance to be named a refugee and then to seek asylum and eventually be naturalized as a citizen. So their theory has to be that she lacks good moral character under 1101 F6, which is the only theory tried in this case under the good moral character provision. And under that part of the statute, it says that a lie must be made for the purpose of obtaining an immigration benefit. These two questions that you mentioned, you mentioned question 23 and 24, I think, earlier, correct? Yes. Would the fact that she lied on either or both, would that be sufficient to indicate a lack of good moral character? I don't think that it would. And this comes from the Kungis case, which was reaffirmed in this very case at the Supreme Court. There are reasons why an immigrant can lie contemporaneous with an immigration proceeding. And the government must show that they had the subjective intent or bad purpose in doing that. Well, what is there in the record that shows what her intent was in this case? And I know the burden's not on her, but what is there in the record that indicates what her intent was for telling the lies? So intent wasn't really even part of this case below. I think what the government's done is they've pointed to some things, mostly contemporaneousness, in order to say, hey, all of these things show a purpose. But that wasn't part of the case below, and so Ms. Malzonyak didn't put in evidence to contradict her purpose below. But this isn't... The record, should this case be remanded then to have the immigration folks address that? I think the case should be contradicting a purpose and for the government to have a chance to put in evidence tending to show purpose. So it's always interesting when people ask for remands and then we ask them, well, what are you going to do on the remand? And sometimes they answer the question and sometimes not. But whether we remand it, at least always logically seemed to me, to at least be influenced by what the you intend to say on a remand, whether it's affirmatively your burden or whether it's in response to whatever the government says about why she said what she said. So I can't speak precisely to what offer of proof we'll make should the case be remanded, but I do think it's worth noting, and you can take judicial notice of this, that this is an area of extreme ethnic strife in the world. And when Ms. Maslanyak in 2006 was making a statement to the United States about her husband's participation through certain layers, she may have feared for her family, who she has some members of her family back in that region of the world. And just in 2006, Serbia itself was declaring independence and she didn't know if those family members, what side of the border they would be on when ultimately Serbia drew its borders. So I want to go back to just before this. It sounds to me like that what you were telling us is that not only did the government not seek to prove materiality and in fact contended that there was no such requirement, but also did not focus on intent or purpose in any way, viewing that all as kind of part and parcel of one element of the case. Is that sort of right? I think that's correct because her intent is important to the extent that it goes to her good moral character. Well the government just took the position that it didn't have to prove that. Exactly. So there was no opportunity really for any presentation of evidence other than if she had sort of gotten outside the boundaries of what the government sought to prove, which might not have been wise strategy for her. That's exactly correct and I think it is her right to have this case go back to a jury so that they can make this very subjective determination into what was she thinking, what was her state of mind when she made a false statement to the government. And to first put the government up to its burden of proof and then to have Ms. Maslanyak come in and counter that with evidence of her own. At this stage, because purpose was not a public, it is fundamentally unfair to look at the record and say, what did Ms. Maslanyak show to contradict purpose? But the government also did not present evidence tending to show purpose. Well, does the sequence of events not infer that there was a purpose there? I mean, as far as when he was indicted, when her husband was indicted and then she applied for naturalization and as I understand, she was ineligible to apply for maybe more than a year, but she waited until after he was indicted? So I take your point, Your Honor, and I think that the government has adduced evidence to make its case before a jury, but I don't think that there is no alternative explanation for why she would seek naturalization in 2006, particularly because her ethnic home country, she is ethnically Serbian, but it wasn't until 2006 that Serbia declared independence and drew its own borders. So there are other benign reasons why she may have made, or why she would have sought naturalization in that year, and we ask the opportunity to present that to a jury. May it please the Court, Dan Rehnke representing the government in this Supreme Court, in its opinion, almost assumed what the purpose was from, and Judge, like you said, the purpose can be kind of inferred from the testimony, but the Supreme Court made a couple of statements about, made up much of her story while seeking refugee status. Professions of honesty were false. Whatever the Supreme Court said, the Supreme Court is not the entity that is going to make the determination of the legal question before us, and the Supreme Court could not possibly have been purporting to tell us what to do with regard to harmless error. So I don't think that gets you very far, Mr. Rehnke. Okay, I'm just starting with that, but if we get into the actual evidence that was the purpose, and a number of immigration officials testified that had she answered honestly to these questions, that her, and her husband Ratko, who was, he was a derivative applicant, I think it was Todd Gardner who testified that the Since you were not trying to prove materiality, why would you have put that evidence in? At the initial trial? We were still trying to show that through the evidence that you could infer what she was doing, and what she was doing was, if she had told the truth, she wasn't going to get into the United States. She was trying to portray herself as a refugee when actually she, and enter the refugee stream, when actually she was the exact opposite. Her and her husband were involved in the Bosnian-Serbian military, and she knew if she didn't... Now you're conflating the two, so I don't recall seeing that she had any involvement in what her husband did or didn't do, aside from arguably covering it up. No, that's correct, Your Honor. She wasn't involved. Then don't tell us she's involved. I mean... She's involved to the extent that she covered up what he did so they could get into this country. But she wasn't involved in the service, military service in any way, was she? No, no, none whatsoever. But a number of witnesses testified that had she told the truth, that the application would have been delayed or denied, and it can be, I think, inferred from that that her purpose was to seek refugee status, permanent resident status, and then naturalization status. Her statements were clearly material and would have affected any decision that the immigration officials would have made as to her application, and conversely her husband's application. And if we look more at the holding, the Supreme Court's holding, lying on the application does go to good moral character, and it shows that if you lie about something that would have mattered to the immigration officials, that that actually shows bad moral character and is a reason in and of itself to be disqualified. This court found that in Haroon. Now, Haroon's a little different because Haroon didn't ever really contested his purpose for lying. Here, I don't know that the What you just said seems to be inconsistent with the notion that there was proof that you just described. Well, I think it's, if you really look at the testimony, it's really not inconsistent. Well, I guess, I'm assuming that the trial transcript was a part of the original, the record, when we heard the case before. It was. Okay, so we can go back and look at exactly what that record was, which might be necessary in terms of the I mean, Monica Raymeier testified at page ID 794 that if Divna had disclosed Rotco's military service, it would have led to a more in-depth investigation, and possibly denial of the application. Karen Zarlinga testified similarly, page ID 908. Jackie Guevara, in reference to questions 23 and 24, testified Why did the United States, if you had all that in the record, I mean, I'm back to being as puzzled by this case as I was the first time around. Why would the United, yeah, you remember, you probably remember what I said in my concurring opinion, too, but I'm just puzzled as to why you put all this stuff in the record and then took the position the materiality was not an element of the offense. Yeah, I understand, Your Honor, it's a difficult question to answer. We had a case Well, I mean, it's kind of like what were you thinking of, but I will try to see speculating and go on with where we are now. Well, in all honesty, I've talked to the trial attorneys on this, and they, we had one case that you could arguably say made that leap, and I think the larger point is why would the United States be all over the place in taking different positions, and what interest of the United States did it, I don't mean to chew up the last go around, but what interest of the U.S. did it serve to take the position that was taken here, particularly if you felt you didn't need to and had indeed presented evidence that could go to materiality. In retrospect, it served no purpose. Pardon me? In retrospect, it didn't serve a purpose. Well... We shouldn't, you know, I mean, we asked for that instruction, and that's why we're here. And that's why this has been going on for four years. You know, and I understand, but... Well, doesn't fairness dictate that we remand it back and have another trial? Well, I think... In light of the confusion that you just admitted to? Well, I think it goes back then to whether it's harmless error and whether these material statements, or a properly instructed jury would have found that these statements were material to her application. Well, if the jury speaks specifically instructed that there is no materiality requirement, that does mean that there is really no incentive for the defendant to present evidence with respect to materiality. I can't really say really what their incentive, you know, and when that decision was made about the materiality, if it was at the end of their case, whether she had intended to testify or not, I don't know. You weren't the trial attorney. I was not the trial attorney. So we don't know at what point the defendant became aware that the court was going to hold that materiality was not an element. It's in the record, Your Honor, and I'm trying to remember exactly when it happened. Well... It's absolutely in the record because it was discussed and Judge Pearson wrote, or had a fairly detailed ruling where she cited the case that we referred to and then actually mentioned that if this case wanted to go to the Supreme Court, then so be it. But then said, you know, she was going to go with the case that we cited, not instructed materiality. If we kind of go back to what the question is here, it seems to me the question is whether it's beyond a reasonable doubt that an investigation into the false statements, had the government known they were false, would have predictably uncovered that she made that lie for the purpose of obtaining immigration benefits. Now, it's sort of hard to see why she would have lied if it didn't have something to do with immigration, but your fellow counsel has made this argument that she has other explanations as to why she did that. So why do you say that it's beyond a reasonable doubt that the investigation would reveal that it was for purposes of obtaining immigration benefits, as opposed to trying to prevent her relatives from getting in trouble, or whatever it is that she might say on a remand? There is the point of obtaining immigration benefits, but it's also precluded an investigation that would have predictably turned up objectively disqualifying facts. What are the objectively disqualifying facts? That she lied on her application, and she lied about her husband's military service. But just because you lied, a lie itself isn't going to carry the day for the government, because we now know you have to prove it's material, and in this case you have to show harmless error for the inability to prove materiality, which requires a showing of intent, right? So you didn't put in any evidence on intent, for reasons we've discussed. Is that correct? Well, no, we put in evidence through the testimony. We didn't put in evidence to show, okay, here was her intent. She said that she lied. We put in evidence that you could infer intent from. The whole timing of this, when these statements were made, how many times these statements were made, this wasn't a one-time thing, and these weren't minor statements. This wasn't a statement about, you know, the Supreme Court talked about embarrassment or fear. This isn't that situation. Well, why isn't it that situation? That's what we're trying to figure out here. Because the statements materially would have affected her application to become a United States, to become a refugee, a resident. And why would they? That's just conclusory. Why would they have materially affected that if, upon further investigation, the government satisfied itself that she had a benign reason for the lie? That's essentially what the appellant's argument is here. Well, I think we just go back to the testimony that was presented, because that's really what we have is only the testimony that was presented to the jury. And the testimony that was presented to the jury was that this would have affected her. It would have affected it in terms of there being something for authorities to have further examined. But I haven't exactly heard why it would have disqualified her or her family. You mean the lie on the application, or if you're told the truth? I'm really referring here to the information that she, to the information her husband had been in the military. That's, again, they were trying to portray themselves as refugees when actually they were the cause of people becoming refugees. Or he was. Ratko was. Not necessarily. But again, you're inferring, you're mixing the effect on him versus the effect on her, it seems to me. The effect on him. You're also referring to them as they in a way that lumps them together. And she's the one here with the conviction. Well, they are lumped together just because they, you know. They were lumped together in the petition, but they're not lumped together as defendants. Before this court. The lie is not disqualifying as to her unless it shows lack of good moral character, right? One thing, yes. Now, in order to show lack of good moral character, then you have a couple different routes that you can take to do that. And in this case, one of which is that it's beyond a reasonable doubt that she did it for purposes of obtaining immigration benefits as opposed to some other benign reason, right? Is that correct? So why is it, I'm just asking you again, why is it beyond doubt that it was for getting immigration benefits as opposed to some other benign reason aside from the fact that you say it is? I think it's just from the, again, it's hard to answer that question without just looking back at the testimony, the timing of the statements. Well, that's what we're asking you to do. Now is your time to tell us again. Okay, so you made the statements, and she made these statements three times. Well, presumably, the motivation each time could have been protection of relatives. It doesn't get any less likely that she made them for a purpose because she made them several times, I don't think. Well, I think in the context she made it, though, Your Honor, that's really, you're right, the fact that she made it, she could have made it a dozen times, but in the context of when she made the statements and who she made the statements to. She really only said, she made the false statement in 1998, and then she said she didn't make any false statements both orally and in writing in the same proceeding in 2006. And she's prosecuted for the 2006 statement, but what you claim is the basis of materiality is the foundation of the 1998 statement. Is that a fair description? I think it is. I mean, you can't look at the 2006 statement without the 1998 representations. So what happens if it turns out, and maybe this is fanciful, that she has a good explanation for why she lied in 1998, but because it's not within reasonable proximity of when Serbia became an independent state in 1996, there's no justification for having continued that lie in 2006. I mean, in that case, then you'd win, right? But how do we know whether the reason why she lied initially and then repeated it, as you say, three times or twice, whatever it is, is the same each time? I think just, again, looking at... It's just circumstantial. You're saying because she pops up to help out her husband, therefore she must be lying. Well, it's circumstantial, and it's an inference that's conveyed based on the testimony that was presented. A reasonable inference that the jury could find. Thank you, sir. No further questions. I only have one further question. And you say it's a reasonable inference that a jury could find. It seems to me, unless I'm missing something, that is a much different standard than what we're applying here, which is, is it beyond doubt, which, as I understand it, is the harmless error standard we use in this case. It is. So something a jury could have done is a lot different than saying, now it's beyond a reasonable doubt what the jury would have done. Do you agree? I do, and I misspoke. Okay. Okay. Okay. Thank you, Aaron. I presume you reserved some time for rebuttal, but I don't think I wrote it down. I have four minutes. And what? Four minutes. Okay. I just want to focus on two points in this rebuttal time. The first is that because this wasn't an issue below, what the government has to do at this stage is sort of scour the record to cobble together evidence of Ms. Moslanyak's purpose. And what they're left with is a couple of statements that she lied contemporaneously. And the Supreme Court's opinion in this case and in Kungis shows that there are many reasons someone may choose to lie contemporaneously with an immigration proceeding. And that's really question-begging to say she lied contemporaneously. What is the last thing you just said? The sentence that was before the what. I'm sorry. If you can't recreate it, don't worry about it. There are many reasons why someone may lie contemporaneously with applying for immigration benefits. And while it may serve as circumstantial proof that it happened on a number of occasions. Well, let's assume that she had a number of different reasons, and I'm giving you that as a possibility here. It's just hard to see how none of those reasons were to obtain immigration benefits, given the sequence and the timing here. I understand what the timing looks like here, and I think that the government has evidence to put on a case. But I also think that Ms. Moslanyak has things that she can raise to dispute that. And you're saying because of the erroneous instruction the trial judge gave that she had no reason or basis to put on any of that testimony. Exactly. But how can that be true? The instructions are given at the end of the case. Had they been settled before the trial started, so that she knew what was going to happen during the trial? I am not entirely sure. I remember that in the transcript when they're talking about it, the counsel below said, I'm just going to preserve my objection to these jury instructions. So I know there was a lot of discussion about what the instructions would be, even before the stage when you would normally consider jury instructions, right before the charge. But I can't say off the top of my head when that was. Do you remember exactly when that was? I don't. Was there some sort of pre-hearing procedures to determine what the standard was the government had to meet, and therefore the scope of the hearing? I don't remember. Does that even happen in immigration cases? I don't remember right now what happened in the trial, and I'm sorry for that. Did you represent her at trial? We did not. Did you represent her before us previously, and then you took the case to the Supreme Court? Yes, my firm represented her previously. Okay. I'm sorry not to remember. I remember kind of fussing at Mr. Reinke. There's a lot going on, so no need to remember the specifics of who the face is here. But what I want to say is that the record sites that Mr. Reinke gave before are sort of question-begging when you go back and look at them. He talked about Ms. Reimeyer and Zarlenga giving testimony that they would have investigated further, and no one is disputing that if she said, yes, I had previously lied, that the government would have gone to uncover, well, what did you lie about? But they didn't say, and that investigation would have led to these facts, which would be disqualifying for her. And the same is true of Mr. Gardner. I know that he gave a record site. I guess where you lose me there is had it occurred the way you said, so she says, yes, I lied. Well, what did you lie about? I lied about what my husband did during the war. And at that point, once the jury or whoever this is here knows that she lied to arguably conceal war crimes, then how are you possibly going to win this case? I understand what the circumstances of this case look like. I will say, for what it's worth, there is no evidence that Mr. Malzahniak participated in war crimes in the evidence below, in the record below. And I understand. His or Mr.? Mr. Okay. The evidence is about the brigade that he was a part of. All right. So if we change that to say that he was a member of a brigade that is known to have committed war crimes. Even assuming that proof, I see what it looks like, but I think that Ms. Malzahniak is entitled to make her case to a jury for what her purpose is on that very subjective inquiry. All right. Anything further? Okay. We appreciate very much the argument that both of you have given, and we will consider the case carefully. And hang on a minute. Are you retained or appointed? My colleague was appointed, and he has since left the firm, so we are retained. Okay. I was going to thank you if you were appointed, but I couldn't find the sheet that, well, here's the sheet that would have told me that. Thank you both. And with that, the court may adjourn the court. This honorable court is now adjourned. Thank you. Thank you. Well, what do you think? I don't know. I can't figure out what a lawyer looks like, just like with all these papers sort of strewn about.